Slip Op. 11-37

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BOND STREET, LTD., | : |
| *Plaintiff*, | : |
| v. | : |
| UNITED STATES, | : |
| *Defendant*, | : |
| and | : |
| GLEASON INDUSTRIAL PRODUCTS, INC. | : |
| and PRECISION PRODUCTS, INC., | |
| | : |
| *Defendant-Intervenors*. | |

Court No. 08-00049

[Sustaining U.S. Department of Commerce's remand determination reaffirming agency ruling that subject hand cart is within scope of antidumping duty order on hand trucks from the People's Republic of China]

Dated:  April 12, 2011

James Caffentzis (James Caffentzis), for Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Stephen C. Tosini and Joshua E. Kurland); Thomas M. Beline, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

Crowell & Moring, LLP (Matthew P. Jaffe), for Defendant-Intervenors.

# OPINION

RIDGWAY, Judge:

Pending before the Court are the Final Results of Redetermination Pursuant to Court Remand, filed by the U.S. Department of Commerce pursuant to the decision in Bond Street I.  *See*

*generally* Final Results of Redetermination Pursuant to Court Remand:  Hand Trucks and Certain

Parts Thereof from the People's Republic of China ("Remand Results"); <u>Bond Street, Ltd. v. United</u>

<u>States</u>, 33 CIT ____, 637 F. Supp. 2d 1343 (2009) ("<u>Bond Street I</u>").

 <u>Bond Street I</u> remanded to Commerce the agency's determination that the Stebco Portable

Slide-Flat Cart (style no. 390009 CHR) – imported by Plaintiff Bond Street, Ltd., a New York

importer of business and travel products – falls within the scope of the antidumping duty order on

hand trucks from the People's Republic of China.  *See* <u>Bond Street I</u>, 33 CIT at ____, 637 F. Supp.

2d at 1351-52; Hand Trucks and Certain Parts Thereof from the People's Republic of China: Scope

Ruling on Stebco Portable Slide-Flat Cart Inv. No. A-570-891 (May 30, 2007) (Administrative

Record ("A.R.") Doc. No. 12) ("Scope Ruling");[1] Notice of Antidumping Duty Order: Hand Trucks

and Certain Parts Thereof From the People's Republic of China, 69 Fed. Reg. 70,122 (Dec. 2, 2004)

("Antidumping Order").  In particular, <u>Bond Street I</u> ruled that Commerce's Scope Ruling could not

be sustained because the agency had "failed to . . . make a determination as to whether the toe plate

of the Stebco cart can 'slide[] under a load for purposes of lifting and/or moving the load,'" an

operational/functional requirement set forth in the Antidumping Order, and the central focus of this

litigation.  *See* <u>Bond Street I</u>, 33 CIT at ____, 637 F. Supp. 2d at 1350 (*quoting*, *inter alia*,

Antidumping Order, 69 Fed. Reg. 70,122).

---

[1]The complete administrative record in this action includes the record compiled by
Commerce during the initial scope proceeding, as well as the record that the agency compiled in the
course of the remand proceeding.  Citations to documents in the administrative record of the initial
scope proceeding are noted as "A.R. Doc. No. ____," while citations to documents in the record of
the remand proceeding – the supplemental administrative record – are noted as "S.A.R. Doc. No.
____."

On remand, Commerce "found through testing [of ] Bond Street's Stebco Cart that [the cart] is adept at sliding under a load for the purposes of lifting/moving that load.  Additionally, once the projecting edge/toe plate is slid under a load, the projecting edge/toe plate remain[s] stable and there [is] no difficulty in lifting and moving the load."  *See* Remand Results at 4; *see also id*. at 1, 3-4, 9-10, 12.  Commerce thus concluded that – in addition to possessing the four specific physical characteristics required by the Antidumping Order – the Stebco cart also has "the operational and functional ability to slide under a load for the purposes of lifting and/or moving that load."  *See id*. at 4; *see also id*. at 1-2, 10, 12.  Commerce's Remand Results therefore reaffirmed the agency's earlier determination that the Stebco cart falls within the scope of the Antidumping Order.  *See* Remand Results at 1-2, 9, 12.

Bond Street contends that "the tests conducted by [Commerce] do not provide a basis for . . . find[ing] that the Stebco [cart] . . . slide[s] under a load" within the meaning of the Antidumping Order, and that the agency failed to properly consider certain tests conducted by Bond Street and the agency itself.  *See* Plaintiff's Comments on Final Results of Redetermination Pursuant to Court Remand ("Pl.'s Brief") at 2, 3.  In addition, Bond Street critiques the adequacy of Commerce's explanation of its remand determination, and raises various other procedural objections.  *See*, *e.g.*, *id*. at 3-4.  Bond Street concludes that the Remand Results are not supported by substantial evidence in the record, and are otherwise not in accordance with law.  *See generally id*.; Plaintiff's Reply to Defendant's Response to Bond Street's Comments Upon Commerce's Remand Results ("Pl.'s Reply Brief").  Bond Street argues that the Court therefore should "reject Commerce's remand results and

either remand the matter once again . . . , or alternatively enter judgment for Bond Street based upon the facts of record."  *See* Pl.'s Reply Brief at 6.

In contrast, the Government and the Defendant-Intervenors – Gleason Industrial Products, Inc. and Precision Products, Inc. (collectively, "Domestic Manufacturers") – contend that the Remand Results comply fully with the instructions in <u>Bond Street I</u>, and are both supported by substantial evidence and otherwise in accordance with law.  The Government and the Domestic Manufacturers therefore argue that Commerce's remand determination should be sustained in all respects.  *See generally* Comments on Final Results of Redetermination Pursuant to Court Remand ("Def.-Ints.' Brief"); Defendant's Response to Bond Street's Comments Upon Commerce's Remand Results ("Def.'s Brief").

Jurisdiction lies under 28 U.S.C. § 1581(c) (2000).  For the reasons set forth below, the Remand Results, including Commerce's remand determination concluding that the Stebco cart is within the scope of the Antidumping Order, must be sustained.

## I.  <u>Background</u>

In December 2004, the Department of Commerce published an antidumping duty order covering hand trucks and certain parts thereof from the People's Republic of China.  *See* Notice of Antidumping Duty Order:  Hand Trucks and Certain Parts Thereof From the People's Republic of China, 69 Fed. Reg. 70,122 (Dec. 2, 2004) ("Antidumping Order").  The first section of the Antidumping Order (captioned "Scope of Order") expressly defines the covered merchandise, identifying four specific required physical characteristics, in addition to the operational/functional requirement that is at issue in this action:

A complete or fully assembled hand truck is a hand-propelled barrow consisting of [1] a vertically disposed frame having [2] a handle or more than one handle at or near the upper section of the vertical frame; [3] at least two wheels at or near the lower section of the vertical frame; and [4] a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame. *The projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load.*

 . . . . That the vertical frame, handling area, wheels, projecting edges or other parts of the hand truck can be collapsed or folded is not a basis for exclusion of the hand truck from the scope of the [Antidumping Order]. . . . Finally, that the hand truck may exhibit physical characteristics in addition to the vertical frame, the handling area, the projecting edges or toe plate, and the two wheels at or near the lower section of the vertical frame, is not a basis for exclusion of the hand truck from the scope of the [Antidumping Order].

Examples of names commonly used to reference hand trucks are hand truck, convertible hand truck, appliance hand truck, cylinder hand truck, bag truck, dolly, or hand trolley. . . .

Excluded from the scope [of the Antidumping Order] are small two-wheel or four-wheel utility carts specifically designed for carrying loads like personal bags or luggage in which the frame is made from telescoping tubular material measuring less than ⅝ inch in diameter[.]

Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section) (emphasis added).


A.  Commerce's Scope Ruling on the Stebco Cart

After the Antidumping Order issued, Bond Street sought a ruling from Commerce that the

Stebco cart is beyond the scope of the Order, and is therefore not subject to antidumping duties

under that Order.  *See* Bond Street Request for Scope Ruling (A.R. Doc. No. 1).  Bond Street argued

that the Stebco cart is not a "hand truck" within the meaning of the Antidumping Order, but – rather

– a collapsible "portable luggage cart," designed for "personal uses such as carrying luggage,

carrying personal bags, or a salesman storing the cart in his car to carry in many samples[] or sample

cases together at one time to avoid multiple trips." *See id*. at 2, 4; *see also id*. at 3; A.R. Doc. No.

4 at 3.  According to Bond Street, several physical features of the Stebco cart – *i.e.*, its collapsible

toe plate, the placement of a bungee cord hook, and the absence of a kick plate – make it impossible

for the cart to "slide[] under" a load for purposes of lifting and/or moving the load, as required by

the express terms of the Antidumping Order.  *See* A.R. Doc. No. 1 at 3.  Bond Street asserted that

those particular features of the Stebco cart mean that – as a practical matter – "items must be *lifted*

*onto* the [toe] plate for purposes of lifting and/or moving [them]."  *Id*. at 2 (emphasis added); *see*

*also id*. at 4; A.R. Doc. No. 4 at 4; A.R. Doc. No. 11 at 2-3.

Commerce analyzed Bond Street's Request for Scope Ruling under the framework of 19

C.F.R. § 351.225(k)(1) (2006), finding "the descriptions of the merchandise" to be dispositive.  *See*

Hand Trucks and Certain Parts Thereof from the People's Republic of China: Scope Ruling on

Stebco Portable Slide-Flat Cart Inv. No. A-570-891 (May 30, 2007) (A.R. Doc. No. 12) at 8 ("Scope

Ruling").[2]  In its Scope Ruling, Commerce determined that the Stebco cart incorporates all four of

---

[2]In determining whether merchandise falls within the scope of an antidumping order, Commerce first determines, pursuant to 19 C.F.R. §§ 351.225(d), whether it can make a determination based upon the request for a scope ruling and the factors listed in § 351.225(k)(1) – specifically, "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the [International Trade] Commission."  *See* 19 C.F.R. §§ 351.225(d), 351.225(k)(1) (2006); Walgreen Co. v. United States, 620 F.3d 1350, 1352 (Fed. Cir. 2010).

However, "[the] predicate for the interpretive process is language in the order that is subject to interpretation."  Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1383 (Fed. Cir. 2005). Absent "language . . . that is subject to interpretation," there is no cause to look beyond the order. Further, "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms."  Duferco Steel Inc. v. United States, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (internal citations omitted) (*quoted with approval in* Walgreen Co., 620 F.3d at 1354).  Accordingly, in Commerce's analysis, "[t]he primary source" is the antidumping order itself, which is the "cornerstone" of any scope determination.  *See*

the requisite physical characteristics of a hand truck specified in the scope language of the

Antidumping Order – (1)  a vertical frame, (2) at least one handle, (3) two or more wheels, and (4)

a projecting edge or toe plate.  *Id*. at 8.  Commerce also reviewed each of the three physical features

of the Stebco cart that Bond Street highlighted – *i.e.*, the collapsible toe plate, the bungee cord hook,

and the lack of a kick plate, and determined that none of them placed the Stebco cart beyond the

scope of the Antidumping Order.  *See id*. at 3, 8.  In addition, Commerce found that – because the

cart's frame includes telescoping tubing with a diameter of greater than ⅝ inch – the Stebco cart

does not fall within the Antidumping Order's express exclusion of "small . . . utility carts

specifically designed for carrying loads like personal bags or luggage in which the frame is made

from telescoping tubular material measuring less than ⅝ inch in diameter."  *See id*. at 8-9;

Antidumping Order, 69 Fed. Reg. at 70,122 (express exclusion in "Scope of Order" section).

        In light of the findings summarized above, Commerce's Scope Ruling concluded that the

Stebco cart falls within the scope of the Antidumping Order.  *See* A.R. Doc. No. 12 at 8-9.

However, Commerce failed to test the Stebco cart.  Nor did Commerce's Scope Ruling make any

finding on the ability of the cart's toe plate to "slide[] under a load for purposes of lifting and/or

moving the load."  *See generally id*., *passim*.

---

Walgreen Co., 620 F.3d at 1356-57 (*quoting* Duferco Steel, 296 F.3d at 1097).  Thus, it is "[t]he
language of the [antidumping] order, not the petition" (or any other collateral source) which
controls.  *See* Tak Fat Trading Co., 396 F.3d at 1386.

        If Commerce's analysis under 19 C.F.R. §§ 351.225(d) is not dispositive, the review
proceeds to § 351.225(e), and Commerce applies the five Diversified Products criteria codified in
the agency's regulations.  *See* 19 C.F.R. §§ 351.225(e), 351.225(k)(2) (2006); Diversified Products
Corp. v. United States, 6 CIT 155, 572 F. Supp. 883 (1983).

## B.  The Ruling in Bond Street I

Bond Street commenced the instant action challenging Commerce's Scope Ruling.  As detailed in Bond Street I, Bond Street's Motion for Judgment on the Agency Record emphasized that the Antidumping Order requires that the projecting edge or toe plate of subject merchandise "slide[] under a load for purposes of lifting and/or moving the load."  *See* Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section).  Bond Street argued that the Stebco cart is not capable of sliding under a load in such a manner, and that Commerce therefore should have reached a negative scope determination.  *See generally* Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1344.

The Government and the Domestic Manufacturers maintained that the Scope Ruling should be sustained, because the Scope Ruling expressly addressed each of the physical features of the Stebco cart that Bond Street cited in arguing that the cart's toe plate cannot "slide[] under a load." *See generally* Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1350 (discussing Scope Ruling's analysis of Stebco cart's collapsible toe plate and cart's bungee cord hook, as well as cart's lack of kick plate).

As Bond Street I explained, however, Commerce's Scope Ruling simply missed the point:

> Contrary to the claims of the Government and the Domestic Manufacturers, . . . it is not enough that Commerce analyzed each of the referenced physical characteristics [ – *i.e.*, the Stebco cart's collapsible toe plate, its bungee cord hook, and its lack of a kick plate – ] in isolation.  Bond Street has never claimed that the existence of those physical characteristics, in and of themselves, places the Stebco cart beyond the scope of the Antidumping Order.  To the contrary, the gravamen of Bond Street's argument is that those *physical* characteristics prevent the Stebco cart from having the *functional* or *operational* characteristic set forth in the Antidumping Order – that is, that "[t]he projecting edge or edges, or toe plate, slide[] under a load."

Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1350-51 (*quoting* Antidumping Order, 69 Fed.

Reg. at 70,122).  Bond Street I underscored that:

> [N]owhere in its Scope Ruling . . . did Commerce make a determination as to
> whether the toe plate of the Stebco cart can 'slide[] under a load for purposes of
> lifting and/or moving' that load.  Nowhere in the Scope Ruling did Commerce
> address Bond Street's claim that the collapsible toe plate, the location of the bungee
> cord hook, and the absence of a kick plate prevent the toe plate of the Stebco cart
> from 'slid[ing] under' a load.

Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1351.  This matter was therefore remanded to

Commerce for further action, to permit the agency "to make a finding as to whether the Stebco cart's

toe plate 'slides under a load for purposes of lifting and/or moving the load,'" as required by the

scope language in the Antidumping Order.  *See id.*, 33 CIT at ____, 637 F. Supp. 2d at 1351-52

(*quoting* Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section)).

## C.  Commerce's Determination on Remand

In the course of the remand proceeding before the agency, Commerce officials conducted

a series of three tests using loads of varying weights and dimensions to evaluate the ability of the

Stebco cart to "slide[] under" a load – the operational/functional requirement set forth in the

language of the Antidumping Order defining the scope of the Order's coverage.  *See generally* Final

Results of Redetermination Pursuant to Court Remand Hand Trucks and Certain Parts Thereof from

the People's Republic of China at 1, 3-7, 12 ("Remand Results").[3]  First, Commerce tested the

Stebco cart's ability to slide under a box of files measuring 10 x 16 x 13 inches and weighing 15

---

[3]A sample of the Stebco cart is included in the administrative record.  *See* Bond Street I, 33
CIT at ____ n.5, 637 F. Supp. 2d at 1347 n.5 (citations omitted); *see also* Audio Recording of Oral
Argument on Remand Results ("Audio Recording") at 10:04-10:15.  Photos of the Stebco cart are
also available in the record.  *See, e.g.*, A.R. Doc. No. 1 at Attachment (item C on "proof page" from
2006 S.P. Richards Co. General Line Catalog, marked as 380A); S.A.R. Doc. No. 2 at Attachments
1, 1A, & 1B.

pounds. *See id.* at 3-4.  In addition, Commerce tested the cart's ability to slide under a box of files

measuring 9 x 18 x 11.5 inches and weighing 30 pounds. *See id.*  And, finally, Commerce tested

the cart's ability to slide under an empty two-drawer metal file cabinet measuring 25 x 19.5 x 14.5

inches and weighing 50 pounds. *See id.* at 4. In conducting its tests, the agency specifically

addressed Bond Street's assertions that the Stebco cart's collapsible toe plate, its bungee cord hook,

and its lack of a kick plate prevent the cart from "slid[ing] under" a load. *See id.* at 2, 3; *see also*

*id.* at 4-7.

      The Remand Results explain that, in each of Commerce's three tests, the Stebco cart was

able to "slide[] under" the load:

> For the lighter [15-pound] box, [Commerce] officials merely rolled the Stebco Cart
> up to the box and the toe plate slid under the box.  With the heavier [30-pound] box,
> [Commerce] officials leveraged the Stebco Cart with their feet.  For the two-drawer
> metal filing cabinet, [Commerce] officials were able to slide the Stebco Cart's
> projecting edge/toe plate under the filing cabinet by slightly tilting the cabinet.

Remand Results at 4; *see also id.* at 11.  Based on its testing, Commerce concluded that the Stebco

cart "is adept at sliding under a load for the purposes of lifting/moving that load."  *Id.* at 4.  The

testing further demonstrated that "once the [Stebco cart's] projecting edge/toe plate is slid under a

load, the projecting edge/toe plate remained stable and there was no difficulty in lifting and moving

the load."  *Id.*  And Commerce specifically determined, through testing, that – contrary to Bond

Street's claims – none of the three physical features highlighted by Bond Street prevents the Stebco

cart from "slid[ing] under" a load, as specified in the scope language of the Antidumping Order.  *See*

*id.* at 4-5 (addressing the collapsible toe plate); *id.* at 5-6 (addressing lack of kick plate); *id.* at 6-7

(addressing location of bungee cord hook); *see generally id.* at 3, 7.

In several rounds of comments on Commerce's draft Remand Results, Bond Street attacked

both the methodology and the results of Commerce's testing.  Bond Street argued, among other

things, that Commerce's "leveraging" of the Stebco cart in the test involving the 30-pound box was

not consistent with the manner of the cart's intended use, and that the Antidumping Order did not

permit Commerce to "tip" or "tilt" the 50-pound file cabinet in order to slide the Stebco cart under

it.  *See generally* Remand Results at 4, 6, 8, 9.

Apart from attacking two of Commerce's three tests on the Stebco cart, Bond Street also

criticized the agency for not conducting two additional tests.  Specifically, Bond Street argued that

Commerce should have tested the cart's ability to "slide[] under" three stacked boxes, weighing 20

pounds each.  *See* Remand Results at 7, 10.  Bond Street further urged Commerce to replicate a test

that Bond Street itself had conducted.  As the Remand Results explained:

> Bond Street . . . argues that it . . . attempted, to no avail, to slide the Stebco Cart
> under a box measuring 18 x 12 x 10 inches and weighing 50 pounds.  Bond Street
> attached three color photographs [to its comments on the draft Remand Results]
> purporting to depict the Stebco Cart's wheels lifting off the ground as the cart's [toe]
> plate makes contact with the box and the cart beginning to collapse on a second
> attempt.

*Id*. at 7.  Bond Street emphasized the design of the Stebco cart's toe plate, contrasting it with that

of a so-called "typical hand truck" and arguing that the thickness of the Stebco cart's toe plate

"makes sliding [it] under [the] loads of many boxes extremely difficult, if not impossible."  *See id*.

at 8 (*quoting* Bond Street comments on draft Remand Results (S.A.R. Doc. No. 2) at 3); *see also id*.

at 7.  Similarly, Bond Street emphasized that the Stebco cart has a relatively low load capacity,

which Bond Street sought to contrast with the load capacities of "typical" hand trucks contemplated

by the Antidumping Order.  *See id*. at 10; *see also* <u>Bond Street I</u>, 33 CIT at _____ n.5, 637 F. Supp.

2d at 1347 n.5 (noting that maximum load capacity of Stebco cart is 275 pounds).

Apparently rejecting Commerce's test using the 30-pound box (due to "leveraging") as well as the agency's test using the 50-pound file cabinet (due to "tilting"), Bond Street insisted that Commerce's "success at sliding the Stebco Cart under one load" – *i.e.*, the 15-pound box – could not justify Commerce's determination that the Stebco cart falls within the scope of the Antidumping Order.  *See* Remand Results at 8; *see also id.* at 9 (noting Bond Street's argument that Commerce's "limited testing . . . cannot support its proposed finding that the subject cart is designed to slide under a load").

In its final Remand Results, Commerce individually addressed each of Bond Street's objections.  Commerce explained that – contrary to Bond Street's assumption – the agency's use of "leveraging" in its test using the 30-pound box did not involve "lifting [the Stebco cart's] wheels off the ground [in order] to slide [the] load onto the toe plate."  *See* Remand Results at 8, 10-11. Instead, "[Commerce] officials press[ed] against a portion of the Stebco Cart with their feet to give support to the cart." *Id.* at 10.  The Remand Results further noted that "[t]he Order's scope language is silent with respect to the operation of [a] hand truck," except to require that "the projecting edge/toe plate . . . slide under a load for purposes of lifting and/or moving the load." *Id.* at 10-11.

As to Bond Street's objection to Commerce's file cabinet test, Commerce rejected Bond Street's argument that "the Order's language is not inclusive of carts with projecting edges or toe plates capable of sliding under a load only when the load is tilted." *See* Remand Results at 11. Commerce noted that "the Order is silent with respect to the tilting of the items that are to be moved and/or lifted by the hand truck," and stated that the agency has consistently ruled in the past that

hand carts are not excluded from the scope of the Antidumping Order merely because they are capable of "slid[ing] under" a load only if that load is tipped or tilted.  *Id.*

Commerce also addressed Bond Street's efforts to contrast the design of the Stebco cart with that of so-called "typical hand trucks."  In particular, Commerce pointed out that the Antidumping Order is silent on the issue of load capacity.  *See* Remand Results at 10 (noting that "the language of the Order does not require an analysis of weight limitations").   In addition, Commerce characterized as "misplaced" Bond Street's emphasis on "the 2.41 mm width difference between the Stebco Cart's projecting edge or . . . toe plate" and that of a hypothetical "typical hand truck[]." *Id.* As the Remand Results explained, the Antidumping Order requires only that a hand cart be able to "slide[] under" a load; the relative "efficiency and ease of . . . use" in sliding any particular hand cart under a load "speaks to end-user satisfaction rather than scope inclusion/exclusion." *Id.* (footnote omitted); *see also id.* at 5.

Finally, the Remand Results rejected Bond Street's contention that "sliding the Stebco Cart under one load does not warrant finding the cart to be within the scope of the Order."  *See* Remand Results at 8; *see also id.* at 9.  Commerce disputed Bond Street's math, and, more fundamentally, dismissed Bond Street's claim that – to fall within the scope of the Antidumping Order – a hand cart must be able to perform "hand truck tasks" on all items (or at least "all items it was designed or intended to move").  *See id.* at 8, 9, 11.  The Remand Results stated:

> [C]ontrary to Bond Street's assertion, it is not the case that [Commerce] was successful at sliding the Stebco Cart under only a single load. . . . [W]e tested [the] Stebco Cart on two boxes of different weights, and on a two-drawer filing cabinet demonstrating the Stebco Cart's ability to slide under and move different loads of different sizes. We further disagree with Bond Street in its contention that the Order requires that the hand truck in question must perform "the tasks of a hand truck on

> all of the items it was designed or intended to move." . . . [T]he Order does not exclude hand trucks designed with a primary use.  We find neither a literal requirement in the Order's scope language nor a suggestion to this effect.  The Order's scope language is additionally silent on the hand truck's item-specific limitations.

*Id*. at 11; *see also id*. at 9 (acknowledging the Domestic Manufacturers' point that – even if a hand cart cannot slide under some loads, the cart nevertheless falls within the scope of the Order if the cart can slide under other loads).  Because there is no requirement that a hand cart be able to perform "hand truck tasks" on "all items it was designed or intended to move," and the Antidumping Order requires only that a hand cart within the scope of the Order be capable of "slid[ing] under" an unspecified load, Commerce concluded that – in light of the results of the agency's three tests – the additional tests advocated by Bond Street were not necessary.  *See id*. at 10 (explaining that Bond Street's proposed test involving stack of three boxes weighing 20 pounds each was not necessary, because Commerce's testing was sufficient to "confirm[] that the Stebco Cart possesses the fundamental functional and operative capability to slide under a load"); *see also id*. at 9, 11.

The Remand Results concluded that, "notwithstanding the collapsible and angled design of the toe plate, the location of the bungee cord hook, and the absence of a kick plate," Bond Street's Stebco cart "is adept at sliding under a load for the purposes of lifting/moving that load"; that "once the projecting edge/toe plate is slid under a load, the projecting edge/toe plate remained stable and there was no difficulty in lifting and moving the load"; and that the Stebco cart thus "has the operational and functional ability to slide under a load for the purposes of lifting and/or moving that load," and therefore falls "within the scope of the Order."  *See* Remand Results at 3-4, 12; *see also*

*id*. at 1-2, 5, 6-7, 9-11.  Commerce therefore reaffirmed the determination in its Scope Ruling.  *See*

*id*. at 1-2, 3, 9 & n.2, 12.

## II.  <u>Standard of Review</u>

In reviewing a challenge to a ruling by Commerce on the scope of an antidumping order (*i.e.*,

a determination as to "whether a particular type of merchandise is within the class or kind of

merchandise described in an existing . . . antidumping . . . duty order"), the agency's determination

must be upheld unless it is found to be "unsupported by substantial evidence on the record, or

otherwise not in accordance with law." 19 U.S.C.  §§ 1516a(a)(2)(B)(vi), 1516a(b)(1)(B)(i) (2000);

*see* <u>Walgreen Co. v. United States</u>, 620 F.3d 1350, 1354 (Fed. Cir. 2010); *see also* <u>Diamond</u>

<u>Sawblades Mfrs. Coalition v. United States</u>, 33 CIT ____, ____, 650 F. Supp. 2d 1331, 1352 (2009),

*aff'd*, 626 F.3d 1374 (Fed. Cir. 2010) (explaining that "[judicial] review of agency determinations

issued pursuant to a court-ordered remand is governed by the same standard of review used in

reviewing the [agency's] original determination").

"[S]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  <u>Universal Camera Corp. v.</u>

<u>NLRB</u>, 340 U.S. 474, 477 (1951) (*quoting* <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

Moreover, any determination as to the substantiality of evidence "must take into account whatever

in the record fairly detracts from its weight," including "contradictory evidence or evidence from

which conflicting inferences could be drawn."  <u>Suramerica de Aleaciones Laminadas, C.A. v. United</u>

<u>States</u>, 44 F.3d 978, 985 (Fed. Cir. 1994) (*quoting* <u>Universal Camera</u>, 340 U.S. at 487-88).  On the

other hand, the mere fact that "it [may be] possible to draw two inconsistent conclusions from

evidence in the record . . . does not prevent Commerce's determination from being supported by

substantial evidence." Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001);

*see also* Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966) (same).  Finally, while

Commerce must explain the bases for its decisions, "its explanations do not have to be perfect."

NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009).  However, "the path

of Commerce's decision must be reasonably discernable," to support judicial review.  *Id.*

In the case at bar, Bond Street maintains that Commerce's remand determination is not

supported by "substantial evidence on the record," and that it is also "otherwise not in accordance

with law."

## III.  Analysis

Bond Street challenges the Remand Results on both substantive and procedural grounds.

On the merits, Bond Street contests the validity of the tests on which Commerce relies to

establish that – in the words of the Antidumping Order – the Stebco cart will "slide[] under a load

for purposes of lifting and/or moving the load."  *See generally* sections III.A-III.C, *infra*; *see also*

Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section).

As a matter of procedure, Bond Street argues that Commerce should have consulted with the

parties in determining the agency's test methodology.  *See* section III.D.1, *infra*.  In addition, Bond

Street disputes the adequacy of the rationale provided in the Remand Results on issues including

Commerce's choice of test procedures, Commerce's treatment of various tests, and Commerce's

decision not to conduct some additional testing that Bond Street proposed.  *See* sections III.D.2-

III.D.3, *infra*.  Bond Street further contends that Commerce failed to properly address certain

specific physical features of the Stebco cart.  *See* section III.D.4, *infra*.  Ultimately, Bond Street

concludes that the Remand Results are not supported by substantial evidence in the record.  *See*

section III.E, *infra*.[4]

     As discussed in greater detail below, however, Bond Street's arguments are far wide of the

mark.[5]  Bond Street's challenge to the Remand Results must therefore fail, and Commerce's remand

determination that the Stebco cart will "slide[ ] under a load for purposes of lifting and/or moving

---

[4]In Commerce's initial scope proceeding, and in the remand proceeding before the agency, Bond Street raised a number of claims, arguments, and objections that Bond Street did not include in either of its post-remand briefs filed with the Court.

    For example, in the initial scope proceeding and in the remand proceeding, Bond Street argued that "the angled design of [the] toe plate" makes it "virtually impossible" to slide the Stebco cart under a load.  *See* Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1346 (citation omitted); Remand Results at 4-5, 7.  Similarly, Bond Street claimed in both fora that "tipping" or "tilting" a load in order to slide a cart under it "would necessarily result in damage" to the load, and "over time, would also damage the frame of the cart itself."  *See* Bond Street I, 33 CIT at ____, 637 F. Supp. 2d at 1348-49 (citation omitted); Remand Results at 5.  In the initial scope proceeding, Bond Street argued that the "size and composition" of the Stebco cart's wheels limit the cart's load capacity, and that the cart "would be damaged if pushed from the rear."  *See* Bond Street I, 33 CIT at ____ & n.5, 637 F. Supp. 2d at 1347 & n.5 (citation omitted).  And, in the remand proceeding before the agency, Bond Street argued that the Stebco cart's toe plate is thicker than that of the "typical hand truck," making it "extremely difficult, if not impossible" to slide the cart "under [the] load of many boxes."  *See* Remand Results at 8, 10.  Bond Street similarly objected to Commerce's use of "leveraging" to slide the Stebco cart under the file cabinet.  *See id.* at 8, 10-11; *see also* n.13, *infra* (discussing Bond Street's objection to "leveraging").  Of course, all claims, arguments, and objections that Bond Street elected not to address in its post-remand briefs must be deemed waived.

    [5]As a threshold matter, the Government correctly notes that Bond Street's claims generally misapply the proper standard of review.  *See generally* Def.'s Brief at 3, 8.  In particular, Bond Street fails to demonstrate that the tests conducted by Commerce are unreasonable.  Absent such a showing, "even if Bond Street . . . proposed a different test that happened to be reasonable, Commerce's determination would still govern."  *See id.* at 8 (*citing* United States v. Eurodif S.A., 555 U.S. ____, ____, 129 S. Ct. 878, 886 (2009) (explaining that the issue is not whether plaintiff presents "the better view," but whether agency's determination is reasonable)); *see also id.* at 3 (noting that "even if Bond Street's proposed testing methodology . . . were reasonable, . . . so long as Commerce's methodology is reasonable, then the agency's determination should be sustained").

the load" – and thus falls within the scope of the Antidumping Order – must be sustained.  *See* Remand Results at 1-2, 3-4, 9-10, 12; Antidumping Order, 69 Fed. Reg. at 70,122.

### A.  Bond Street's Challenge to Commerce's File Cabinet Test

Bond Street's principal challenge to Commerce's remand determination is Bond Street's claim that the agency's "testing methodology" contravened "the plain meaning of the language" of the Antidumping Order.  Pl.'s Reply Brief at 4; *see also* Pl.'s Brief at 8.  Focusing on the phrase "slide[] under" as that phrase is used in the Order, Bond Street argues that Commerce erred by "tipping" or "tilting" the load in the course of testing whether the Stebco cart could "slide[] under" a two-drawer metal filing cabinet.  In particular, Bond Street contends that the dictionary definition of "slide [under]" does not permit "tipping" or "tilting" a load, and that Commerce has "impermissibly change[d] the scope" of the Antidumping Order.  *See generally* Pl.'s Brief at 4, 7-9; Pl.'s Reply Brief at 4, 5 n.7; Audio Recording of Oral Argument on Remand Results ("Audio Recording") at 19:40-20:33, 27:06-28:53, 29:13-30:29, 31:13-32:14, 32:56-33:09, 42:11-43:16, 45:25-46:04, 1:02:41-1:04:03, 1:05:47-1:06:10.

Bond Street's argument is predicated on a fundamental misreading and misapplication of the phrase "slide[] under."  Bond Street points to nothing in the dictionary definition of "slide [under]" which (either explicitly or implicitly) precludes the "tipping" or "tilting" at issue here.[6]  Nor can

---

[6]According to Bond Street, "[t]he term '*slide* under'" is defined as "to move or pass smoothly or easily."  *See* Pl.'s Reply Brief at 4 (*quoting* "Merriam-Webster dictionary" definition 4a for the word "slide"), 5 n.7 (referring to "go[ing] with a smooth continuous motion under a load"); *see also* Audio Recording at 27:12-27:30 (stating that "slide under" means to "go under with a smooth motion"); *id*. at 1:02:41-1:03:05; *id*. at 34:06-34:30 (referring to "continuous, smooth motion").

But, as explained herein, nothing in the dictionary definition of "slide" is in any way

Bond Street do so.  It is not the Stebco cart that was "tipped" or "tilted" in this case, it was the load;[7]

and it is the cart that must "slide[] under."  As a matter of pure logic, the "tipping" or "tilting" of *a*

*load* says nothing about the motion or movement of *a hand cart*, which – to fall within the scope of

the Antidumping Order – must "slide[] under" the load (whether the load is first "tipped"/"tilted,"

or not).  *See generally*, *e.g.*, Audio Recording at 1:43:53-1:45:10 (counsel for the Government

explains that the Stebco cart "slid under the load in a smooth motion" when the file cabinet was

tipped or tilted "in a common sense way"); *id*. at 1:59:51-l:59:56, 2:00:11-2:00:29 (same).[8]  Here,

_____

inconsistent with "tipping" or "tilting" a load under the circumstances here.  Or, to put it differently, "tipping" or "tilting" a load before sliding a cart under it is entirely consonant with the dictionary definition of "slide [under]."  Contrary to Bond Street's claim, "tipping" or "tilting" a load is not at odds with either "the plain meaning of the language of the order" or the "common meaning and understanding" of the phrase "slides under."  *See* Pl.'s Reply Brief at 4; Pl.'s Brief at 8.

Further, there can be no claim that allowing "tipping" or "tilting" of a load renders the "slide[] under" language in the Antidumping Order a nullity.  For example, the "stabilizing plate" on the garden cart at issue in Vertex lacked a beveled edge, and instead featured "a round steel wire . . . not conducive to sliding under a load," whether the load was tipped or not.  The garden cart was therefore ruled to be beyond the scope of the Antidumping Order.  *See* Vertex Int'l, Inc. v. United States, 30 CIT 73, 80 (2006); *see also* Audio Recording at 1:45:45-1:46:58, 1:58:33-2:00:28 (*inter alia*, contrasting Vertex and case at bar); *id*. at 2:00:37-2:00:59 (suggesting that, if it is necessary to manually lift and place a load onto a hand cart, it cannot be said that the cart will "slide[] under" the load).

[7]In the course of oral argument, counsel for Bond Street repeatedly referred interchangeably to the "tipping"/"tilting" of the file cabinet and "slid[ing] the load [*i.e.*, the file cabinet] onto" the Stebco cart.  *See*, *e.g.*, Audio Recording at 20:01-20:31.  However, "tipping"/"tilting" is quite different from "sliding."  When an object is "tipped" or "tilted," part of the object is lifted, but the object otherwise maintains the same "footprint" on the surface on which it is located; the object does not move forward or backward.  In contrast, when an object is "slid," the object's "footprint" changes; the object moves forward or backward on the surface on which it is located.  In the instant case, contrary to the assertions of Bond Street's counsel, there is no evidence that Commerce did anything other than "tip" or "tilt" the file cabinet in testing the Stebco cart.

[8]In briefing, Bond Street argued categorically that the need to "tip" or "tilt" a load would place a hand cart squarely beyond the scope of the Antidumping Order.  *See* Pl.'s Brief at 4, 7-9;

there is no dispute that the Stebco cart "move[d] or pass[ed] smoothly or easily" under the file cabinet, with the cabinet "slightly tilt[ed]." *See* Remand Results at 4; *see also id*. at 11; Def.-Ints.' Brief at 2, 4; Def.'s Brief at 2-4, 9; Audio Recording at 1:43:53-1:44:33, 2:00:11-2:00:29. *Compare*, *e.g.*, Final Scope Ruling: Expeditors Tradewin, LLC, on behalf of Ameristep Corporation Inc. at 7 (May 18, 2007) (ruling that carts are beyond scope of Order, because they cannot "slide[] under" load, even "by tipping the load slightly").[9]

Further, as the Government notes, the Remand Results explained that the Antidumping Order is silent on the "tipping"/"tilting" of loads, and, moreover, that Commerce's determination in this case is consonant with a line of other cases that have ruled that various hand carts are within the scope of the Antidumping Order even though they "slide[] under" a load only if the load is "tipped" or "tilted" first. *See* Def.'s Brief at 9-10; *see also* Remand Results at 11 & n.6.

In <u>Gleason Products</u>, for example, the court ruled that the Antidumping Order covers a "welding cart" (model 93851), because that cart is "capable of sliding under a load *if the load is slightly tipped*." <u>Gleason Indus. Prods., Inc. v. United States</u>, 32 CIT ____, ____, 556 F. Supp. 2d

---

Pl.'s Reply Brief at 3-4, 5 n.7. However, in the course of oral argument, Bond Street moderated its position. At oral argument, counsel for Bond Street candidly (albeit begrudgingly) acknowledged that – even as to some hand carts which are indisputably hand trucks within the scope of the Antidumping Order – "tipping" or "tilting" of the load might be required, at least as to some loads, on some surfaces. *See*, *e.g.*, Audio Recording at 40:16-40:29, 41:44-42:05, 51:49-52:01, 1:07:00-1:07:10, 1:09:26-1:09:37, 1:25:07-1:25:34, 1:26:19-1:26:57.

[9]Copies of Commerce's ruling in Expeditors Tradewin and other relevant scope rulings are included in an addendum to the Government's brief. *See* Def.'s Brief at Appendix, A20-A28 (Expeditors Tradewin, *supra*); *id*. at A43-A49 (Conair, n.10, *infra*); *id*. at A50-A58 (E&B Giftware, n.10, *infra*).

1344, 1348-49 (2008) (emphasis added).[10]  Indeed, there are certain types of hand trucks that are

indisputably within the scope of the Antidumping Order even though it is necessary to "tip" or "tilt"

the very loads that the hand trucks are specifically designed to carry.  *See*, *e.g.*, Audio Recording at

25:59-26:27, 2:08:42-2:09:28 (discussing "cylinder hand truck" at issue in <u>Gleason</u>); *see also*

Antidumping Order, 69 Fed. Reg. at 70,122 (listing "cylinder hand truck" among the "names

commonly used to reference hand trucks").

      In short, contrary to Bond Street's assertions, there is nothing "unauthorized" about

"tipping"/"tilting" a load in order to slide a cart under it.  *See* Pl.'s Brief at 4.[11]  Bond Street's

---

[10]*See also*, *e.g.*, Final Scope Ruling: Expeditors Tradewin at 7 (ruling that carts are beyond scope of Order, because "an individual cannot easily position the horizontal frame of the Non-Typical Cart and Grizzly Cart beneath a load *by tipping the load slightly* due to the size of the Non-Typical Cart's and Grizzly Cart's wheel" (emphasis added)); Scope Ruling on Conair Corporation's "LadderKart" at 6 (Oct. 20, 2008) (ruling that LadderKart is within scope of Order, because, *inter alia*, "the LadderKart's projecting edge or toe plate in fact can slide under a load *if that load is slightly tipped*" (emphasis added)); Scope Ruling on E&B Giftware, LLC's ML6275C Personal Luggage Cart at 7 (Feb. 3, 2010) (ruling that luggage cart is within scope of Order, even though "*minimal tilting of the load*" is required (emphasis added)).

[11]As a procedural matter, Bond Street contends that Commerce's file cabinet test should be disregarded because – according to Bond Street – the agency's initial Scope Ruling in this matter "did not consider the question of whether 'tilting' or 'tipping' a load [is] within the meaning of the scope language" of the Antidumping Order.  *See* Pl.'s Brief at 7.  According to Bond Street, the "tipping"/"tilting" of the file cabinet thus "raises new matter and is beyond the administrative record" compiled by the agency in the initial scope proceeding.  *See id.*  Pointing to a footnote in <u>Bond Street I</u> referring to the "tipping" or "tilting" of a load, Bond Street further argues that Commerce's reliance on the file cabinet test also "[goes] beyond the Court's [decision in <u>Bond Street I</u>] by interjecting a new issue regarding the interpretation of the Order into this case."  *See id.* at 7-8 (referring to <u>Bond Street I</u>, 33 CIT at ____ n.13, 637 F. Supp. 2d at 1352 n.13).  But Bond Street's objections are not well taken.

      Bond Street either misreads or misrepresents the footnote that it cites from <u>Bond Street I</u>. Bond Street's intimations notwithstanding, <u>Bond Street I</u> ruled only that it was at that time premature for the Court to "address the merits of the . . . claim that a cart falls within the scope of the Antidumping Order even if the cart's toe plate slides under a load only if that load has been

reliance on the dictionary definition of "slide [under]" is misplaced.  And, as Commerce noted in

the Remand Results, the Antidumping Order itself "is silent with respect to the tilting of the items

that are to be moved and/or lifted." *See* Remand Results at 11; *see also* Def.'s Brief at 9.  Moreover,

Commerce's consistent and longstanding practice has been to include within the scope of the

Antidumping Order hand carts that are capable of "slid[ing] under" a load, even if only when the

loads are "tipped"/"tilted." *See* Remand Results at 11; Def.'s Brief at 9 (and rulings cited there).

Indeed, the "tipping"/"tilting" of loads has received the judicial imprimatur. *See* Def.'s Brief at 9

(*citing* <u>Gleason Prods.</u>, 32 CIT at ____, 556 F. Supp. 2d at 1348-49).  Bond Street has pointed to

nothing to distinguish this case from the numerous other cases where Commerce and the courts have

permitted "tipping"/"tilting." Bond Street's objections to Commerce's "tipping"/"tilting" of the load

– and, in particular, Bond Street's objections to the agency's file cabinet test – must therefore be

rejected.

    B.  <u>Bond Street's Challenge to Commerce's 15-Pound and 30-Pound Box Tests</u>

       Although Bond Street cannot claim that Commerce's tests using 15- and 30-pound boxes

involved "tipping" or "tilting" of those loads,[12] Bond Street nevertheless contests their validity based

---

'tilted' or 'tipped.'" *See* <u>Bond Street I</u>, 33 CIT at ____ n.13, 637 F. Supp. 2d at 1352 n.13.  Nothing
in <u>Bond Street I</u> precluded Commerce from "tipping"/"tilting" a load in testing the Stebco cart; <u>Bond
Street I</u> merely reserved the legal issue of the permissibility of "tipping"/"tilting" until now, when
the issue is ripe.  More generally, Bond Street has waived any procedural objections to consideration
of that legal issue by failing to raise them in a timely fashion, at the administrative level.

    [12]As discussed immediately above, if a hand cart has the four requisite physical
characteristics, and if the hand cart is not expressly excluded from the Antidumping Order's
coverage, the hand cart falls within the scope of the Order, provided that "[t]he projecting edge or
edges, or toe plate, slides under a load for purposes of lifting and/or moving the load," *whether the
load is first tipped or tilted*, *or not*. *See* section III.A, *supra*; Antidumping Order, 69 Fed. Reg. at

on what Bond Street dismisses as the "extremely light loads." *See* Pl.'s Brief at 3; *see also id*. at 5

(referring to Commerce's "choice of very light loads"). Arguing that "the two boxes of files

weigh[ed] a mere 15 and 30 pounds, respectively," Bond Street asserts that "hand trucks covered

by the Order generally have a carrying capacity within the 200 to 1,000 pound range." *See id*. at 4;

Pl.'s Reply Brief at 5; Audio Recording at 51:32-51:42; *see generally* Pl.'s Brief at 4-5, 7; Pl.'s

Reply Brief at 5-6.

Bond Street's attempt to read the Antidumping Order to include a minimum load capacity

rests on a false premise, however, and its arguments as a whole are not persuasive. *See generally*

Remand Results at 8, 10; Def.'s Brief at 4, 5-8; Audio Recording at 1:36:14-1:36:25, 1:37:30-

1:37:49, 1:52:32-1:53:10.[13]

---

70,122. As the Government points out, however, Commerce's determination in this matter could
be sustained even without reaching the "tipping"/"tilting" issue. *See generally* Audio Recording at
1:42:58-1:43:29, 2:01:31-2:01:36.

Commerce "slightly tilted" the load only in its file cabinet test. *See* Remand Results at 4,
11; *see also* Def.-Ints.' Brief at 4; Def.'s Brief at 4, 9; Audio Recording at 1:31:22-1:31:58, 1:42:58-
1:43:29. There was no need to "tip" or "tilt" the load in two of the three tests that the agency
conducted on remand; the Stebco card was able to "slide[] under" the 15-pound box of files and the
30-pound box of files, without "tipping" or "tilting" either load. *See* Remand Results at 4, 11; *see
also* Def.-Ints.' Brief at 4; Def.'s Brief at 4; Audio Recording at 1:11:25-1:11:34, 1:31:22-1:31:58,
1:42:58-1:43:29. Accordingly, Commerce's remand determination in this matter could be sustained
on the strength of those two tests, without regard to the file cabinet test (and, thus, even if the
Antidumping Order precluded the "tipping"/"tilting" of a load).

[13]In addition to criticizing the weight of the load, Bond Street's comments on the draft
Remand Results also took issue with one other aspect of the methodology that Commerce used in
the test involving the 30-pound box of files. Specifically, Bond Street's comments on the draft
Remand Results asserted that – in order to slide the Stebco cart under the 30-pound box – Commerce
had "leveraged" the cart such that the cart's wheels were lifted off the ground. According to Bond
Street, any such "manipulation" of the cart would be inconsistent with its intended use. *See* Remand
Results at 8; *see also id*. at 4, 6.

As an aside, while Bond Street represents that "hand trucks *covered by the Order* generally have a carrying capacity within the 200 to 1,000 pound range" (*see* Pl.'s Reply Brief at 5 (emphasis added)), the administrative record is devoid of evidence to support that assertion.  It is true that the original 2003 petition initiating the antidumping duty proceeding that ultimately resulted in the Antidumping Order at issue here generally described hand trucks in terms of, *inter alia*, the specified

---

However, in the final Remand Results, Commerce explained that Bond Street's argument was based on a simple but fundamental mistake concerning the agency's use of the term "leveraged":

> Bond Street misunderstands the term "leveraging" as used in the draft remand redetermination.  Our description of "leveraging" the Stebco Cart . . . refers to Department officials pressing against a portion of the Stebco Cart with their feet to give support to the cart rather than lifting the Stebco Cart's wheels off the ground.

Remand Results at 10-11; *see also id.* at 6; Def.-Ints.' Brief at 3.

Neither of Bond Street's post-remand briefs makes mention of any concern about Commerce's "leveraging" of the Stebco cart in testing the cart's ability to "slide[] under" the 30-pound box.  Nevertheless, Bond Street made a number of allusions to the issue during the course of oral argument. *See*, *e.g.*, Audio Recording at 56:22-56:30, 56:52-57:05, 57:39-57:44, 58:08-58:38, 1:00:32-1:00:59, 1:16:50-1:17:17, 1:18:41-1:19:29.  As a threshold matter, Bond Street waived its right to further pursue any such objections by failing even to mention them in its briefs. *See*, *e.g.*, Novosteel SA v. United States, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (holding that party waived argument which was not presented to Court of International Trade "until after [the party] had filed its principal summary judgment brief," reasoning that "parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief").

On the scant existing record (particularly given the absence of any briefing), it is impossible to discern the exact nature of Bond Street's concerns.  But, even if Bond Street had briefed (and thus properly preserved) its arguments, Bond Street still could not prevail.  As the Remand Results aptly note, "[t]he Order's scope is silent with respect to the operation of [a] hand truck."  *See* Remand Results at 10; *see also* Audio Recording at 2:04:29-2:05:10 (Domestic Manufacturers noting that "leveraging" is routine in use of hand trucks, referring to S.A.R. Doc. No. 2 at Attachment 2 (photo submitted by Bond Street), showing foot being used to "leverage" so-called "typical" hand truck, just as Commerce official used foot to "leverage" Stebco cart in file cabinet test); *id.* at 2:11:48-2:12:00 (Government echoing Domestic Manufacturers' observations).

load capacity.  *See* <u>Vertex Int'l, Inc. v. United States</u>, 30 CIT 73, 81 n.11 (2006) (referring to language in 2003 petition generally describing load capacity of hand trucks).   Significantly, however, the load capacity language in the 2003 petition specifically was not carried over into the Antidumping Order itself.  *See* Antidumping Order, 69 Fed. Reg. 70,122 *et seq.* (expressly defining "Scope of Order" in detail, with no mention whatsoever of any sort of minimum (or maximum) load capacity); *see also* Remand Results at 10 (explaining that "the language of the Order does not require an analysis of weight limitations"); Def.'s Brief at 5; Audio Recording at 1:36:14-1:36:25, 1:52:32-1:53:10.  Because the scope of the Antidumping Order is not defined in terms of load capacity, it simply cannot be said – as a factual matter – that "hand trucks covered by the Order generally have a carrying capacity" of any particular weight (much less "the 200 to 1,000 pound range" that Bond Street alleges).

        Even more to the point, as a matter of law, the language concerning load capacity that appeared in the 2003 antidumping petition cannot override the Antidumping Order, and accordingly is of little relevance at best.  The Court of Appeals has emphasized that it is "[t]he language of the order, not the petition" which controls.  *See* <u>Tak Fat Trading Co. v. United States</u>, 396 F.3d 1378, 1386 (Fed. Cir. 2005).  "The scope of [an] order can be clarified but it cannot be changed by the interpretive process."  *Id.*, 396 F.3d at 1383.  Thus, although "the petition and the investigation may provide valuable guidance as to the interpretation of [a] final order," they "cannot substitute for language in the order itself."  <u>Duferco Steel, Inc. v. United States</u>, 296 F.3d 1087, 1097 (Fed. Cir. 2002); *see also* <u>Walgreen Co.</u>, 620 F.3d at 1357 (same); Def.'s Brief at 6.  Moreover, "a predicate

for the interpretive process is language in the order that is subject to interpretation." <u>Tak Fat</u>

<u>Trading Co.</u>, 396 F.3d at 1383.

Here, Bond Street has identified no language dealing with load capacity in the Antidumping

Order – much less language that requires "clarification" or "interpretation."  Instead, Bond Street

seeks a wholesale re-write of the Order, to include a load capacity limitation that the drafters of the

Order specifically elected not to include.  This Bond Street may not do.[14]

In light of this focus on the language of the Antidumping Order itself as the "cornerstone"

of any analysis (*see* <u>Walgreen Co.</u>, 620 F.3d at 1357 (citation omitted)),  Commerce's longstanding

and consistent practice in the application and administration of the Antidumping Order – from the

initial drafting of the Order, up to the present day – has excluded any and all consideration of load

capacity.  *See generally* Def.'s Brief at 6-7; Audio Recording at 1:37:30-1:37:49.  For example, in

drafting the language defining the scope of the Antidumping Order during the original antidumping

---

[14]In any event, as the discussion above makes clear, even if the analysis were to go beyond the four corners of the Antidumping Order, the more salient fact would be not that the 2003 antidumping duty petition included a load capacity range in its general description of hand trucks, but – rather – that the drafters of the Order declined to include a load capacity limitation in the language of the final Order.

Bond Street points to certain language in <u>Vertex</u> discussing the 2003 antidumping petition's reference to load capacity.  *See* Pl.'s Brief at 5 (discussing <u>Vertex</u>, 30 CIT at 81 & n.11).  However, as the Government correctly observes, the language on which Bond Street relies was not central to the outcome in that case.  *See* Def.'s Brief at 6; <u>Vertex</u>, 30 CIT at 80 (holding that – due to, *inter alia*, the fact that, instead of "the projecting edge of a hand truck," the garden cart there at issue has "a round steel wire that is not conducive to sliding under a load" – that cart "cannot . . . slide under a load" and therefore is not within the scope of the Antidumping Order).  And, more importantly, as discussed above, the load capacity language in the 2003 petition was not included in the language of the final Antidumping Order itself, which is binding and definitive.  *See* Antidumping Order, 69 Fed. Reg. 70,122 *et seq.*; *see also* Remand Results at 10; Def.'s Brief at 6; *see generally* Audio Recording at 1:52:32-1:53:10.

duty investigation, Commerce evaluated various scope exclusion requests.[15]  In addressing one such

request (which sought the exclusion of a certain portable, collapsible "luggage cart"), Commerce

explained that the language concerning load capacity which appeared in the 2003 antidumping

petition did not constitute a request for an exclusion from the scope of the Antidumping Order,

underscoring that:

> [L]oad capacity is not a factor in the scope of the investigation.  The reference to
> load capacity (*i.e.*, "loads generally not exceeding 1000 pounds") in the petition
> appears in a general description of the subject merchandise, not in the petitioners'
> recommended scope language, or elsewhere in the current scope of this investigation.

Scope Exclusion/Clarification Requests: Alton Industries, Inc.; Safco Products Company; A.J.

Wholesale Distributors, Inc.; and Wilmar Corporation at 5 (Oct. 6, 2004); *see also id.* at 3 *et seq.*

(rejecting, *inter alia*, argument that "although the scope of the investigation makes no reference to

load capacity, the petitioners were only concerned about heavy-duty hand trucks with 600 lbs. or

larger load capacities"); Def.'s Brief at 6-7; Audio Recording at 1:37:30-1:37:49.

     And, over the years, Commerce has steadfastly maintained its position on the irrelevance of

load capacity in its scope rulings (such as that in the case at bar), throughout the agency's

administration of the Antidumping Order.  For example, in one such scope ruling, Commerce

rejected arguments that a particular "trolley" was not within the scope of the Order because the

---

[15]Scope exclusion requests are similar to scope determinations (such as the determination that
Bond Street challenges here).  In the course of drafting the Antidumping Order, Commerce
considered various scope exclusion requests urging the agency to incorporate specific language into
the Antidumping Order which would exclude from the scope of the Order some types of hand trucks
that did not meet certain specifications.  *See*, *e.g.*, Antidumping Order, 69 Fed. Reg. at 70,122
(stating that "Excluded from the scope [of the Order] are small two-wheel or four-wheel utility carts
specifically designed for carrying loads like personal bags or luggage in which the frame is made
from telescoping tubular material measuring less than ⅝ inch in diameter."); *see also* Def.'s Brief
at 6.

trolley "can be used to move luggage" and has a "vertical weight capacity of . . . only 150 lbs." *See*

Final Scope Ruling: Total Trolley, LLC at 4, 8-9 (Jan. 10, 2005).  Commerce there stated:

> [H]and truck load capacity was not a factor in the scope of the [original antidumping
> duty] investigation.   The reference to load capacity (*i.e.*, "loads generally not
> exceeding 1000 pounds") in the [2003 antidumping] petition appears in a general
> description of the subject merchandise, not in the petitioners' recommended scope
> language, or elsewhere in the current scope of the Order.

*Id*. at 8-9; *see also* Audio Recording at 1:37:30-1:37:49.   Commerce determined that the

merchandise at issue in Total Trolley was within the scope of the Antidumping Order.  *See* Total

Trolley at 1, 10; *see also* Def.'s Brief at 7.[16]

        As the Government properly concludes, for the reasons outlined above, "Commerce's

selection of items to test on the Stebco Cart was not limited by considerations of weight, but rather,

was simply designed to determine whether the Stebco Cart could 'slide[] under a load for the

purposes of lifting and/or moving the load.'"  Def.'s Brief at 7 (*quoting* Antidumping Order, 69 Fed.

Reg. at 70,122).  It is nevertheless worth noting that, while Bond Street essentially contends that –

to fall within the scope of the Antidumping Order – hand trucks should have a load capacity "within

the 200 to 1,000 pound range" (*see* Pl.'s Reply Brief at 5; *see also* Audio Recording at 51:32-51:42)

– Bond Street has conceded that the Stebco cart itself is actually "designed to carry/move load(s)

up to a maximum weight of 275 pounds" (with an "ideal" load of 150 pounds).  *See* Pl.'s Reply Brief

at 5; *see also* Def.'s Brief at 6 (*citing* A.R. Doc. No. 4); Audio Recording at 1:38:18-1:38:28; Bond

Street I, 33 CIT at _____ n.5, 637 F. Supp. 2d at 1347 n.5 (citation omitted).  In other words, even

---

[16]As note 9 above explains, various relevant rulings by Commerce – including the rulings
in Alton Industries and Total Trolley – are included in an addendum to the Government's brief.  *See*
Def.'s Brief at Appendix, A29-42 (Alton Industries, *supra*); A59-A68 (Total Trolley, *supra*).

if the scope of the Antidumping Order *were* limited to hand trucks with a load capacity "within the

200 to 1,000 pound range" (which it clearly is not), such a criterion would not serve to exclude the

Stebco cart from the scope of the Order.

The loads used by Commerce in the two tests at issue – a 15-pound box and a 30-pound box,

of different dimensions – were selected not because they were  particularly light, but rather because

they were representative of the types of loads that Bond Street has stated the Stebco cart is generally

intended to carry.  *See* Audio Recording at 1:31:59-1:33:41 (discussing A.R. Doc. No. 4); *id.* at

1:35:16-1:35:47 (discussing A.R. Doc. No. 1); *id.* at 1:55:37-1:56:00; *see also* Def.'s Brief at 7.[17]

Because load capacity is not "germane" to determining whether a particular hand cart is within the

_____

[17]In the course of oral argument, counsel for Bond Street posed a rhetorical question as to why anyone would bother to use a hand cart to move boxes such as those that Commerce used to test the Stebco cart.  *See* Audio Recording at 51:00-51:08.  As counsel for the Government pointed out, however, documents submitted in the instant proceeding by Bond Street itself establish that the Stebco cart is for use in transporting boxes, among other things.  *See* Audio Recording at 1:32:15-1:33:41, 1:35:16-1:35:47.  It is thus difficult to know what to make of Bond Street's claim that Commerce's tests were not representative of the types of loads that the Stebco cart is used to carry. *See* Audio Recording at 15:55-16:15.

During the initial scope proceeding, for example, Bond Street advised Commerce that, "in addition to its primary purpose of a luggage carrier, [the Stebco cart] can also be used to move *boxes* or other items of a personal nature.  It would not be unusual to use the subject cart for moving *boxes of family photos*, *old dishes*, *clothes*, *etc.*"  *See* A.R. Doc. No. 4 at 3 (emphases added); Audio Recording at 1:31:59-1:33:41.  Further, together with its Request for Scope Ruling, Bond Street submitted a page from a catalog featuring the Stebco cart, among other items.  That advertisement touts the Stebco cart as "ideal for transporting suitcases, *boxes*, equipment and presentation materials."  *See* A.R. Doc. No. 1 at Attachment (item C on "proof page" from 2006 S.P. Richards Co. General Line Catalog, marked as 380A (emphasis added)); Audio Recording at 1:35:16-1:35:47.

It is also worth noting that the testing that Bond Street itself conducted, and other testing that Bond Street proposed, involved loads weighing 50 to 60 pounds.  Bond Street neither conducted nor proposed tests  using heavier loads.  *See generally* section III.D.3, *infra* (discussing test conducted by Bond Street, as well as additional testing that Bond Street proposed).

scope of the Antidumping Order (*see* Def.'s Brief at 7), Commerce reasonably conducted its tests

using loads such as those that the Stebco cart is used to carry.  The purpose of the agency's tests was

to determine whether the Stebco cart would "slide[] under" such loads – and it did.  *See* Remand

Results at 1, 3-7, 9-12; Pl.'s Brief at 4 (conceding that Commerce "was able to slide the cart under

two boxes of files"); Def.-Ints.' Brief at 1-2; Def.'s Brief at 2-5, 7-8; Audio Recording at 50:53-

51:25, 1:17:48-1:17:57, 1:27:19-1:27:41, 1:31:15-1:31:58.  Boxes filled with files weighing 15

pounds and 30 pounds may be relatively light loads, but they are loads nonetheless.  *See* Audio

Recording at 1:31:15-1:31:22, 1:34:46-1:35:10.  Moreover, a cart may be needed to carry a load that

is cumbersome due to its dimensions, even if the load is relatively light.

Simply stated, Bond Street's attempt to read into the Antidumping Order a load capacity

limitation must fail.  Bond Street's broad assertions that the hypothetical "typical" hand truck has

a load capacity "within the 200 to 1,000 pound range" lacks any evidentiary basis in the record.

More importantly, the drafters of the Antidumping Order expressly declined to include in the Order

the load capacity language that appeared in the 2003 antidumping duty petition, on which Bond

Street relies; and it is the language of the Order itself that controls.  Moreover, in its administration

of the Antidumping Order over the years, Commerce has consistently declined to consider load

capacity in determining whether any particular hand cart falls within the scope of the Order.  Like

Bond Street's objections to Commerce's "tipping"/"tilting" of a load in testing the Stebco cart

(discussed in section III.A, above), Bond Street's claims challenging the weight of the loads used

in Commerce's tests must also be rejected.[18]

---

[18]Commerce correctly rejected Bond Street's claim that the Antidumping Order requires that
a hand truck within the scope of the Order be able to "perform 'hand truck tasks' on all items" (or

## C. Bond Street's Reliance on the Design of the Stebco Cart

Distilled to its essence, Bond Street's challenge to the weight of the two boxes that Commerce used to test the Stebco cart is little more than the "flip side" of Bond Street's objection to the "tipping"/"tilting" of the file cabinet in Commerce's third test. Bond Street objects to the 15-pound and 30-pound boxes (which did not require "tipping" or "tilting") as too light, while – at the same time – Bond Street objects to the file cabinet test because the heavier weight of the file cabinet required Commerce to "tip" or "tilt" that load in order to slide the Stebco cart under it.

Specifically, Bond Street contrasts the file cabinet test with the tests using the 15-pound and 30-pound boxes of files, arguing that the Stebco cart was able to "slide[] under" the boxes due to "the light weight of the load," and not "the design of the toe plate." *See* Pl.'s Reply Brief at 5; *see also* Pl.'s Brief at 3, 4, 5; Audio Recording at 48:24-48:32, 50:53-51:25, 1:17:44-1:18:00. According to Bond Street, Commerce needed to "tip"/"tilt" the Stebco cart in the file cabinet test

---

even "on all items it was designed or intended to move"). *See* Remand Results at 9, 11; *see also* Pl.'s Brief at 6.

By its terms, the Antidumping Order requires that – to fall within its scope – a hand cart that features the four requisite physical characteristics (and that does not fall within the Order's express exclusion) must be capable of "slid[ing] under" a load – but, contrary to Bond Street's implication, the Order conspicuously does not specify any particular load. *See* Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section) (requiring only that hand cart within scope of Order be capable of "slid[ing] under *a load* for purposes of lifting and/or moving the load" (emphasis added)); *see also id.* (specifying that hand carts covered by Order may be "suitable for any use")); Remand Results at 11; Def.'s Brief at 7.

The results of any one of Commerce's three tests would have sufficed to prove that the Stebco cart is capable of "slid[ing] under a load." As discussed above, however, the Stebco cart was able to "slide[] under" the load in all three of the tests that Commerce conducted. *See generally* section III.A, *supra* (discussing Commerce's test using a two-drawer file cabinet weighing 50 pounds, and rejecting Bond Street's challenge thereto); section III.B, *supra* (discussing Commerce's tests using 15-pound and 30-pound boxes of files, and rejecting Bond Street's challenge thereto).

because, otherwise, "the toe plate collapses when [a] user pushes the card towards a [heavier] load."

*See* Pl.'s Reply Brief at 2-4; *see also* Pl.'s Brief at 7-8 (asserting that, without "tipping"/"tilting" the

file cabinet, "the Stebco cart was unable to slide under the load because the toe plate began to

collapse when pushed against the [file] cabinet," and that – when Bond Street tested Stebco cart

using a 50-pound box of copy paper, without "tipping"/"tilting" the load – "Bond Street's test . . .

showed the collapse of the toe plate"); *id*. at 4, 5-6; Pl.'s Reply Brief at 2, 3-4, 5 & n.7; Audio

Recording at 19:50-20:33, 1:21:13-1:21:30.[19]

---

[19]Bond Street's post-remand briefs filed with the Court refer only to the collapsible design of the Stebco cart's toe plate, and make no mention of the thickness of the toe plate's edge. *See* Pl.'s Brief at 4, 5-6, 7-8, 9; Pl.'s Reply Brief at 2, 3-4, 5. However, Bond Street apparently focused on that issue before Commerce on remand. The Remand Results thus note:

> Bond Street highlights the "typical hand truck's" thinner projecting edge/toe plate of 1.55 mm versus the Stebco Cart's 3.96 mm. Bond Street asserts that the Stebco Cart's projecting edge/toe plate width, in comparison, "makes sliding under . . . many boxes extremely difficult, if not impossible."

Remand Results at 8; *see also id*. at 8, 9.

As discussed above (*see* n.4, *supra*), Bond Street's failure to raise the thickness of the toe plate in either of its post-remand briefs filed with the Court bars Bond Street, as a matter of both fundamental fairness and law, from continuing to press that point in oral argument. *But see, e.g.*, Audio Recording at 23:31-23:45, 32:15-32:27, 53:19-54:05 (Bond Street argues thickness of Stebco cart's toe plate relative to toe plate of hypothetical "typical" hand truck). However, even had Bond Street properly raised and preserved the point, Bond Street's argument would have found no favor.

The Remand Results correctly rejected as "misplaced" Bond Street's emphasis on "the 2.41 mm width difference between the Stebco Cart's projecting edge or toe plate and a 'typical hand truck's' projecting edge/toe plate." *See* Remand Results at 10. As the Remand Results suggest, Bond Street's claim that the thickness of the toe plate makes sliding the Stebco cart under a load "extremely difficult" is not material. "[R]eference to the efficiency and ease of the [cart's] use . . . as a hand truck . . . speaks to end-user satisfaction rather than scope inclusion/exclusion." *See id*.

Accordingly, for purposes of determining whether a hand cart falls within the scope of the Antidumping Order, either a toe plate "slides under" a load, or it does not. In the instant case,

Bond Street thus seeks to make much of the design of the Stebco cart, and attempts to distinguish that design from the design of hand trucks within the scope of the Antidumping Order (in terms of intended use, weight/load-bearing capacity, and such). *See*, *e.g.*, Pl.'s Brief at 4, 5, 6, 7 n.7, 9; Pl.'s Reply Brief at 2, 5.[20] However, aside from the physical and functional characteristics specifically set forth in the Antidumping Order, the design of any particular hand cart has no bearing on whether or not the hand cart falls within the scope of the Order.

If a hand cart has the requisite four physical characteristics (including a "projecting edge or edges, or toe plate"), and if the hand cart is not expressly excluded from the Antidumping Order's coverage, the hand cart falls within the scope of the Order, whatever its design, provided that "[t]he projecting edge or edges, or toe plate, *slides under a load* for purposes of lifting and/or moving the load." Antidumping Order, 69 Fed. Reg. at 70,122 (emphasis added); *see also* Remand Results at 11-12; Def.'s Brief at 7-8; Audio Recording at 1:34:31-1:34:44, 1:35:57-1:36:14, 1:47:48-1:48:12, 1:51:42-1:52:12.

---

Commerce's testing plainly demonstrates that – without regard to the thickness of the Stebco cart's toe plate – the Stebco cart "can in fact slide under a load." *See* Remand Results at 10; *see also id.* at 9 (noting the Domestic Manufacturers' observation that "even if the Stebco Cart's projecting edge/toe plate cannot be slid under certain items" without "tipping"/"tilting" the loads, "the Stebco Cart is able to slide under other loads and is thus within the scope of the Order"). In any event, however, it is worth noting that the projecting edge of a welding cart that <u>Gleason Products</u> determined to be within the scope of the Antidumping Order has a projecting edge that is approximately *eight times thicker* than the toe plate of the Stebco cart. *See* Audio Recording at 2:05:20-2:06:54; <u>Gleason Prods.</u>, 32 CIT at ____, 556 F. Supp. 2d at 1349 (holding that Antidumping Order covers welding cart with projecting edge that is 1 1/4 inches (*i.e.*, 31.75 mm) thick).

[20]*See also*, *e.g.*, Audio Recording at 15:55-16:15, 18:14-18:29, 28:06-28:32, 37:27-37:48, 40:16-40:29, 43:23-43:36, 46:47-47:06, 51:32-51:41, 52:44-53:49, 57:03-57:05, 1:03:12-1:03:19, 1:04:09-1:04:11, 1:04:59-1:05:05, 1:06:50-1:07:18, 1:08:25-1:08:33, 1:18:57-1:19:05, 1:23:01-1:23:06, 1:24:10-1:24:42, 1:26:19-1:26:57.

Thus, the fact that the Stebco cart may be "*designed* to move relatively light items such as

luggage and sample cases" is of no moment.  *See* Pl.'s Brief at 4 (emphasis added); *see also*, *e.g.*,

Pl.'s Reply Brief at 5.  The Antidumping Order expressly states that merchandise within the scope

of the Order may be "suitable for any use."  Antidumping Order, 69 Fed. Reg. at 70,122; *see also*

Remand Results at 9, 11 (explaining that "the Order does not exclude hand trucks designed with a

primary use"); Def.'s Brief at 7-8; Audio Recording at 1:34:31-1:34:44 (stating that Order covers

both "heavy-duty hand trucks and light-weight hand trucks"); *id.* at 1:35:57-1:36:26; *id.* at 1:47:48-

1:48:12 (explaining that design and intended use of cart are not determinative of inclusion in or

exclusion from scope of Order; salient issue is whether cart is capable of "slid[ing] under" a load);

*id.* at 1:51:42-1:52:12.  The load-bearing capacity of the Stebco cart is likewise irrelevant.  *See*

section III.B, *supra*.

Similarly, contrary to Bond Street's assertions, the Antidumping Order includes no

requirement – much less a "clear requirement" – restricting the Order's coverage to only those hand

carts that feature toe plates specifically "*designed to* slide under a load."  *Compare* Pl.'s Brief at 8-9

(emphasis added) *with* Antidumping Order, 69 Fed. Reg. at 70,122 (expressly defining "Scope of

Order").  Indeed, the word "design" does not appear anywhere in the text of the Antidumping Order,

except in the language of the express exclusion (which all agree has no application here).  *See*

Antidumping Order, 69 Fed. Reg. 70,122.[21]  Moreover, Bond Street conspicuously cites no authority

---

[21]The Antidumping Order's express exclusion states:

Excluded from the scope [of the Antidumping Order] are small two-wheel or four-
wheel utility carts specifically *designed* for carrying loads like personal bags or
luggage in which the frame is made from telescoping tubular material measuring less

for the proposition that a hand cart's inclusion within the scope of the Antidumping Order is dependent upon whether the toe plate is "designed" to "slide[] under" a load.

To fall within the scope of the Antidumping Order, it is necessary only that the toe plate of a hand cart be *capable of* "slid[ing] under a load," as is the toe plate of the Stebco cart here. *See* 69 Fed. Reg. at 70,122; *see also*, *e.g.*, <u>Bond Street I</u>, 33 CIT at ____, 637 F. Supp. 2d at 1350 (declining to sustain Commerce's initial scope ruling because agency "failed to make a determination as to whether the toe plate of the Stebco cart *can* 'slide[] under a load'" (emphasis added)); <u>Gleason Indus. Prods., Inc. v. United States</u>, 31 CIT 393, 398 (2007) (explaining that, to fall within scope of Order, "a hand truck must *be able to* slide under a load" (emphasis added)); <u>Gleason Prods.</u>, 32 CIT at ____, ____, 556 F. Supp. 2d at 1347, 1349 (explaining that coverage under Order "hinges on whether . . . [the subject] carts possess projecting edges *capable of* sliding under a load," and remanding as to one model for agency determination whether that model "is *capable of* sliding under a load" (emphases added)); <u>Gleason Indus. Prods., Inc. v. United States</u>, 32 CIT ____, ____, 2008 WL 4649652 * 3 (2008), *aff'd*, 335 Fed. Appx. 49 (Fed. Cir. 2009) (holding that scope language of Order requires "that the hand cart's projecting edge must *be capable of* sliding under a load" (emphasis added)); <u>Vertex Int'l, Inc. v. United States</u>, 30 CIT 73, 81 (2006)

---

than 5/8 inch in diameter; hand trucks that use motorized operations either to move the hand truck from one location to the next or to assist in the lifting of items placed on the hand truck; vertical carriers *designed* specifically to transport golf bags; and wheels and tires used in the manufacture of hand trucks.

Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section) (emphasis added).  As explained in section I.A above, the Stebco cart is not expressly excluded from the scope of the Antidumping Order, because some of the "telescoping tubular material" in the cart's frame has a diameter of greater than ⅝ inch.  *See*, *e.g.*, Pl.'s Brief at 4 (acknowledging that Stebco cart does not fall within Order's express exclusion).

(reversing Commerce's determination that garden cart was within scope of Order, explaining that agency determination was contrary to the sole record evidence "regarding the garden cart's *ability to slide under a load to lift or carry it*" (emphasis added)).

In sum, Bond Street's emphasis on the specific design of the Stebco cart lies at the very heart of its challenge to Commerce's Remand Results.  But Bond Street's focus on design is misplaced.  Aside from the physical and functional characteristics specifically set forth in the Antidumping Order (and assuming that the express exclusion set forth in the Order does not apply), the design of any particular hand cart has no bearing whatsoever on whether or not the hand cart falls within the scope of the Antidumping Order.  Bond Street's contentions to the contrary have no merit.

### D.  Bond Street's Procedural Objections

Apart from its substantive challenges to the tests that Commerce conducted, Bond Street also raises a laundry list of procedural objections.  As discussed below, however, Bond Street's procedural arguments – like its substantive arguments – cannot carry the day.

#### 1.  Whether Commerce Was Obligated to Seek Comments on Test Methodology

Bond Street argues that, as a general principle, it "would not have been unreasonable to expect [Commerce] to have requested comments from all interested parties on how to test the Stebco cart."  *See* Pl.'s Brief at 3.  But it is telling that Bond Street cites no authority for its implication that Commerce was required to "seek . . . input from the parties."  *See id.* at 3; *see also* Def.'s Brief at 5.

The bottom line is that, whether or not it would have been "reasonable" for Commerce to solicit the parties' views on potential testing methodologies, the agency here was under no obligation to do so.  Bond Street's suggestion to the contrary lacks any foundation in the law.[22]

2.   The Adequacy of Commerce's Rationale for Selection of Test Procedures

Bond Street further faults Commerce for assertedly "offer[ing] no explanation or reason" as to how the agency decided to test the Stebco cart.  *See* Pl.'s Brief at 3.  Bond Street specifically targets Commerce's tests using the 15-pound and 30-pound boxes of files, arguing that the agency "should [have] offer[ed] a plausible explanation or reason" for what Bond Street characterizes as the "extremely light loads employed" in those tests.  *See id.*; *see also* Pl.'s Reply Brief at 5-6.  Bond Street contends that greater explanation is particularly warranted in the case at bar, because Commerce conducted tests using a standard 10-ream box of copy paper weighing 50 pounds in E&B Giftware, a similar case which involved a "personal luggage cart."  *See* Pl.'s Reply Brief at 3 n.3 (referring to Scope Ruling on E&B Giftware, LLC's ML6275C Personal Luggage Cart at 7); *see also id.* at 5; Audio Recording at 55:29-56:03 (noting that load used in Commerce's test in E&B Giftware case was same as load used by Bond Street in the instant case); Remand Results at 7 (noting that Bond Street's test in the instant case involved box weighing 50 pounds).[23]

---

[22]The Government identifies and succinctly summarizes a key conceptual flaw that permeates and taints much of Bond Street's case.  The Government notes: "Bond Street's logic . . . presupposes that the ability to construct a test that hand truck 'A' passes and hand truck 'B' fails would exclude hand truck 'B'" from the scope of the Antidumping Order.  *See* Def.'s Brief at 5.  As the Government emphasizes, however, "[t]hat simply is not the case."  *Id.*

[23]As explained in note 9 above, a copy of Commerce's ruling in the E&B Giftware case is included in an addendum to the Government's brief.  *See* Def.'s Brief at Appendix, A50-A58.

Bond Street's assertions notwithstanding, the Remand Results spoke directly to the notion

that the loads used in Commerce's tests were "extremely light."  In particular, the Remand Results

rebutted the unspoken premise of Bond Street's argument, explaining – as detailed in section III.B,

above – that the scope of the Antidumping Order is not defined in terms of any minimum load

capacity.  *See* Remand Results at 10 (explaining that "the language of the Order does not require an

analysis of [the] weight limitations" of a hand cart in determining whether or not the cart is within

the scope of the Order); *see also* Antidumping Order, 69 Fed. Reg. at 70,122 (defining "Scope of

Order" with no reference to a hand cart's load capacity); Def.'s Brief at 5-7; section III.B & n.17,

*supra* (explaining that loads used in testing Stebco cart were selected to be representative of types

of loads that Stebco cart is generally intended to carry).

To the extent that Bond Street faults the Remand Results for not directly addressing the test

that Commerce conducted in the E&B Giftware case, it is enough to note that Bond Street failed to

raise that argument in the course of the remand proceeding before Commerce.  Commerce can

hardly be faulted for not anticipating in its Remand Results an argument that Bond Street did not

make until some three months after the Remand Results issued, when Bond Street filed its Reply

Brief with the Court.  *See* Pl.'s Reply Brief at 3 n.3.

In any event, as discussed in section III.D.3.a (immediately below), the Remand Results

expressly addressed the test that Bond Street itself conducted using a 50-pound box of copy paper

– the *exact same load* that Commerce used in testing the hand cart that was at issue in the E&B

Giftware case.  *See* Remand Results at 7; Audio Recording at 55:29-56:03.  In addition, the Remand

Results further explained that Commerce tested the Stebco cart using an empty two-drawer file

cabinet weighing 50 pounds – again, the *exact same weight* as the 10-ream box of copy paper that Commerce used to test the hand cart at issue in E&B Giftware.  *See* Remand Results at 4 (stating that file cabinet weighed 50 pounds); *see also id.* at 7 (stating that box used in Bond Street's test weighed 50 pounds); Audio Recording at 55:29-56:03.

In short, it is entirely unclear what more Commerce could reasonably be expected to have said.  Under the circumstances presented here, Commerce's justification of its test procedures in the Remand Results was more than adequate, not only explaining that the scope of the Antidumping Order is not defined in terms of load capacity, but – in addition – also addressing the test that Bond Street conducted on the Stebco cart, which involved the same 50-pound load used in the E&B Giftware case (as well as a second test involving another 50-pound load).

### 3.  The Adequacy of Commerce's Treatment of Certain Tests

Bond Street similarly contends that the Remand Results failed to adequately address both the results of the test conducted by Bond Street and the results of Commerce's own test on the 50-pound file cabinet, and, further, that Commerce should have "offer[ed] a reasonable explanation or justification for ignoring or rejecting the tests proposed by Bond Street."  *See* Pl.'s Brief at 3; *see also id.* at 4, 6; Pl.'s Reply Brief at 2 & n.2, 3-4, 5-6.  None of these claims are persuasive.

### a.  The Test Conducted by Bond Street

In the course of the remand proceeding, Bond Street submitted to Commerce evidence concerning a test conducted by Bond Street, in which Bond Street asserts that it attempted unsuccessfully to slide the Stebco cart under an unopened box – measuring 18 x 12 x 10 inches,

weighing 50 pounds, and containing ten reams of copy paper – without "tipping"/"tilting" the load.

*See* Remand Results at 7; *see generally* Pl.'s Brief at 2, 5 & n.5, 6, 8; Pl.'s Reply Brief at 2 & n.2,

5 & n.7.  To document that test, Bond Street provided Commerce with "three color photographs

purporting to depict the Stebco [c]art's wheels lifting off the ground as the cart's [toe] plate makes

contact with the box[,] and the cart beginning to collapse on a second attempt." *See* Remand Results

at 7; *see also* Pl.'s Reply Brief at 2; S.A.R. Doc. No. 2 at Attachments 1, 1A, & 1B (photos of Bond

Street's test); *id*. at 2-3 (describing Bond Street's test and photos thereof).

Rather incredibly, Bond Street states that the Remand Results "make[] no mention of Bond

Street's test."  *See* Pl.'s Reply Brief at 2; *see also* Pl.'s Brief at 3 (charging Commerce with

"ignoring or rejecting" Bond Street's test); *id*. at 6 (asserting that the Remand Results do not

"discuss or comment on Bond Street's new test").  Quite to the contrary, the Remand Results include

a more detailed explanation of Bond Street's test than do Bond Street's own briefs filed with the

Court.  *Compare* Remand Results at 7 (describing methodology and results of Bond Street's test,

with specificity) *with* Pl.'s Brief at 3 (referring generally to a test "conducted on the Stebco cart by

. . . Bond Street"); *id*. at 4 (referring to "Bond Street's testing of the cart"); *id*. at 5 (asserting that

Stebco cart "was not able to slide under . . . a 50-pound box of copy paper"); *id*. at 5 n.5 (alluding

to "Bond Street's test"); *id*. at 6 (referring broadly to "Bond Street's new test"); *id*. at 8 (stating that

"Bond Street's test" demonstrated "the collapse of the toe plate when pushed against the box of copy

paper"); *and* Pl.'s Reply Brief at 2 (stating only that Bond Street submitted to Commerce "a series

of photographs depicting the unintended collapse of the [Stebco cart's] vertical frame when the user

attempted to slide the toe plate under an unopened box of copy paper containing ten reams of paper"); *id*. at 5 & n.7 (referring to test "made by Bond Street utilizing the Stebco cart").

In sum, there is simply no truth to Bond Street's claim that Commerce "ignored" or "rejected" the test that Bond Street conducted. *See* Pl.'s Brief at 3.  The Remand Results themselves demonstrate that Commerce was plainly cognizant of the details of Bond Street's test, including the test methodology and the test results.  *See* Remand Results at 7.  Moreover, the Remand Results clearly explain why there was no need for Commerce to replicate Bond Street's test and why the results of that test do not justify excluding the Stebco cart from the scope of the Antidumping Order.

The Remand Results explained, for example, that the Antidumping Order includes no specification as to the load that a hand truck must bear to fall within the scope of the Order.  *See* Remand Results at 10; *see also* Def.'s Brief at 5-7.  Thus, the fact that a hand cart can "slide[] under" some loads but not others is no basis for excluding that cart from the reach of the Order.  *See* Remand Results at 9; Def.'s Brief at 8 (noting that "even if a hand truck were unable to move certain loads, this would not be reason for exclusion [from the scope of the Order] if it could meet functional and operational requirements with regard to other loads").  The Remand Results further explained that – contrary to Bond Street's contention – the Antidumping Order does not require "that the hand truck in question must perform 'the tasks of a hand truck on *all* of the items it was designed or intended to move.'" *See* Remand Results at 11 (emphasis added); *see also id*. at 8, 9; Def.'s Brief at 7.  In addition, the Remand Results noted that "the Order does not exclude hand trucks designed with a primary use," as evidenced by the scope language of the Antidumping Order (which includes neither a "literal requirement" nor even a "suggestion"on point).  *See* Remand

Results at 11; *see also id*. at 9; Def.'s Brief at 7.  And, as the Remand Results explained, the

Antidumping Order is also "silent" as to a "hand truck's item-specific limitations."  *See* Remand

Results at 11; *see also* Def.'s Brief at 7.

Bond Street's assertion that the Remand Results "ignor[ed] or reject[ed]" the results of Bond

Street's test is patently at odds with the facts, and cannot be credited.

### b. Commerce's File Cabinet Test

Commerce's explanations in the Remand Results summarized immediately above largely

dispose of Bond Street's related claim that Commerce ignored or rejected the test that the agency

itself conducted using an empty two-drawer file cabinet weighing 50 pounds.  *See* Pl.'s Brief at 3,

5; Pl.'s Reply Brief at 5; *see generally* Remand Results at 4 (describing Commerce's file cabinet

test).  As the Remand Results note, Commerce succeeded in sliding the Stebco cart under the file

cabinet, after first "tipping"/"tilting" the load.  *See* Remand Results at 4.

The gravamen of Bond Street's argument seems to be that – had Commerce properly

considered the results of its file cabinet test – Commerce would have concluded that the Stebco cart

was beyond the scope of the Antidumping Order, because the agency found it necessary to

"tip"/"tilt" the load.  *See* Remand Results at 9 (noting Bond Street's argument that "carts whose

projecting edge/toe plate slides under a load only when the load is tilted" are not within the scope

of the Order).  But the Remand Results explicitly address this notion as well.  In particular, the

Remand Results explain that the Antidumping Order does not preclude "tipping"/"tilting" a load,[24]

_____

[24]Bond Street criticizes "[Commerce's] position that 'tilting' is permissible because the Order
is silent" on the issue, arguing that, in effect, Commerce "substitutes a user's ability to maneuver
a load [o]nto the toe plate [of a cart] for the clear requirement in the Order that the toe plate be

and, moreover, that Commerce's "longstanding, consistent, and Court-approved" administration of

the Antidumping Order has included within the scope of the Order hand carts that can "slide[]

under" a load only if that load is tilted.  *See* Def.'s Brief at 9-10; Remand Results at 11.

Given these facts, it simply cannot be said that the Remand Results "ignor[ed] or reject[ed]"

the results of Commerce's file cabinet test.  Bond Street's claims to the contrary must be dismissed.

### c. Additional Testing Proposed by Bond Street

Equally unavailing is Bond Street's assertion that Commerce failed to "offer a reasonable

explanation or justification for ignoring or rejecting the tests proposed by Bond Street."  *See* Pl.'s

Brief at 3; *see also id.* at 4, 6; Pl.'s Reply Brief at 2 n.2, 2-4, 5-6.  As an initial matter, the reference

to "tests proposed by Bond Street" is opaque, to say the least.  Bond Street is apparently referring

to its suggestion (advanced in the initial scope proceeding) that Commerce test the Stebco cart's

ability to "slide[] under" a stack of three boxes, each weighing 20 pounds.  *See* Pl.'s Brief at 6; Pl.'s

Reply Brief at 2 n.2; Remand Results at 10; A.R. Doc. No. 4 at 2-3.  It is possible that Bond Street

may also be referring to the test that Commerce conducted in the E&B Giftware case (discussed in

section III.D.2, above), using a 50-pound box containing 10 reams of copy paper.  *See* Pl.'s Reply

Brief at 2-3 & n.3, 5; Audio Recording at 55:29-56:03 (noting that load used in Commerce's test in

---

*designed* to slide under a load."  *See* Pl.'s Brief at 8-9 (emphasis added).  As explained above,
however, the Antidumping Order includes no requirement – "clear" or otherwise – limiting the
Order's scope of coverage to hand carts specifically "*designed* to slide under a load."  *See* section
III.C, *supra*.  Assuming that a hand cart features the four requisite physical characteristics, and
assuming that the cart is not expressly excluded from the scope of the Order, the cart is within the
scope of the Order if it is capable of "slid[ing] under" a load, even if it is not specifically "designed"
to do so.  *See id.*; Antidumping Order, 69 Fed. Reg. at 70,122 ("Scope of Order" section).

E&B Giftware case was same as load used by Bond Street in its test in case at bar); Remand Results

at 7 (noting that Bond Street's test in instant case involved box weighing 50 pounds).

Again, with respect to the test that Commerce conducted in the E&B Giftware case, Bond

Street cannot be heard to complain that the Remand Results failed to adequately explain why the

agency did not conduct such a test in this case.[25]  As discussed above, it would be unfair to expect

Commerce to have addressed E&B Giftware in the Remand Results, since Bond Street raised the

E&B case for the first time some three months after the Remand Results issued.  *See* Pl.'s Reply

Brief at 3 n.3.

Similarly unfounded is Bond Street's claim that the Remand Results simply ignored the test

that Bond Street suggested in the initial scope proceeding.  As the Remand Results themselves

indicate, that proposed test was squarely on Commerce's radar screen.  Indeed, the Remand Results

referred specifically to "Bond Street's suggested test consisting of sliding the Stebco Cart under

three boxes, each weighing 20 pounds."  *See* Remand Results at 10 (footnote omitted).  Moreover,

the Remand Results explained why there was no need for Commerce to conduct such a test.  As the

Remand Results noted, the three tests that the agency conducted were more than sufficient to

"confirm[] that the Stebco Cart possesses the fundamental functional and operative capability to

slide under a load."  *Id.*; *see also id.* at 1-2, 3-4, 9-11, 12.

_____

[25]Given that Commerce tested the Stebco cart using a two-drawer file cabinet weighing 50 pounds, it is not clear – as a practical matter – why Bond Street feels that it was necessary for Commerce to test the Stebco cart using a box of the same weight.  *See* Remand Results at 4 (noting weight of file cabinet used in Commerce's test).  Certainly Bond Street has never shed any light on the matter.

In any event, as the Remand Results note (and as discussed elsewhere herein), the fact that a hand cart can "slide[] under" some loads but not others is not sufficient to exclude that cart from the reach of the Antidumping Order. *See* Remand Results at 9; *see also id.* at 11 (explaining, *inter alia*, that a hand truck falls within the scope of the Order even if it does not perform "the tasks of a hand truck on all . . . items"); Def.'s Brief at 8. Thus, even if Commerce had performed Bond Street's proposed tests, and even if the Stebco cart were capable of "slid[ing] under" the loads proposed by Bond Street only if those loads were tipped (or even if the Stebco cart was not able to "slide[] under" the loads at all), Commerce's remand determination would have been unchanged.

As such, the Remand Results clearly illuminate the bases for Commerce's decision not to pursue the additional testing that Bond Street proposed. The law entitles Bond Street to no more.

4.  <u>Commerce's Consideration of Specific Physical Features of the Stebco Cart</u>

Bond Street inexplicably asserts that the Remand Results do not address "Bond Street's claim that [1] the collapsible toe plate, [2] the location of the bungee cord hook, and [3] the absence of a kick plate" prevent the Stebco cart from "slid[ing] under" a load. *See* Pl.'s Brief at 4. Contrary to Bond Street's claims, however, the Remand Results in fact do focus – quite specifically, and at some length – on each of the three features of the Stebco cart that Bond Street highlights. *See* Remand Results at 2-7; *see also* Def.'s Brief at 2-4; Def.-Ints.' Brief at 2-3.

For example, Commerce stated in the Remand Results that it "continues to determine that Bond Street's Stebco Cart is capable of sliding under a load for the purpose of lifting and/or moving the load *notwithstanding* [1] *the collapsible and angled design of the toe plate*, [2] *the location of the bungee cord hook*, *and* [3] *the absence of a kick plate*." *See* Remand Results at 3 (emphasis

added); *see also id*. at 7.  In addition, the Remand Results separately and individually discuss each

of the three physical features – *i.e.*, the collapsible toe plate, the location of the bungee cord hook,

and the absence of a kick plate.  *See id*. at 4-5 (explaining, *inter alia*, that collapsibility of toe plate

does not prevent cart from "sliding under" a load); *id*. at 5-6 (explaining that absence of kick plate

does not prevent cart from "sliding under" a load); *id*. at 6-7 (explaining that location of bungee cord

hook does not prevent cart from "sliding under" a load).

In short, there is no truth to the allegation that the Remand Results fail to address Bond

Street's claim that "the collapsible toe plate, the location of the bungee cord hook, and the absence

of a kick plate" prevent the Stebco cart from "slid[ing] under" a load.  No truth whatsoever.

## E.  Bond Street's Challenge to the Substantiality of the Evidence

Bond Street's case culminates in its claim that Commerce's remand determination is not

supported by substantial evidence in the record.  *See generally* Pl.'s Brief at 2, 3-7, 9; Pl.'s Reply

Brief at 5-6.  According to Bond Street, Commerce "fail[ed] to look at and consider the whole

record, including evidence to the contrary, when making its determination."  Pl.'s Brief at 6-7; *see*

*also id*. at 4-5, 6, 7, 9; Pl.'s Reply Brief at 6.

Referring to the agency's tests using 15-pound and 30-pound boxes, Bond Street maintains

that Commerce's remand determination is "based upon two tests, to the exclusion of all others."  *See*

Pl.'s Brief at 6.  Bond Street contends that Commerce failed to adequately consider the results of

both the agency's own test using a 50-pound file cabinet and the test conducted by Bond Street using

a 50-pound box of copy paper.  *See* Pl.'s Brief at 5; *see also id*. at 3, 7; Pl.'s Reply Brief at 2, 5.

Bond Street points to those tests as "credible evidence" that "should have been considered as

persuasive evidence, to be weighed against [Commerce's] other tests" (*i.e.*, the tests using 15-pound and 30-pound boxes) in reaching the agency's remand determination. *See* Pl.'s Brief at 5; *see also id.* at 3, 7-8; Pl.'s Reply Brief at 5.

As Bond Street correctly observes, the "substantial evidence" test requires Commerce to consider not only that evidence which supports its determination, but also "whatever in the record fairly detracts from its weight," including "contradictory evidence or evidence from which conflicting inferences could be drawn." Suramerica, 44 F.3d at 985 (citation omitted); *see* Pl.'s Reply Brief at 6 (*quoting* Huaiyin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003)); Pl.'s Brief at 3, 7. Applying that standard to the administrative record in this action (including, in particular, the Supplemental Administrative Record compiled on remand), it is clear beyond cavil that, contrary to Bond Street's assertions, Commerce's remand determination is supported by substantial evidence.

As discussed at some length above, Commerce in fact did not ignore or reject the results of the test that the agency conducted to determine whether the Stebco cart will "slide[] under" a two-drawer file cabinet. *See* Remand Results at 4 (describing agency's file cabinet test); *see also id.* at 11. To the contrary, Commerce concluded that the Stebco cart will "slide[] under" such a load, with the load "tipped"/"tilted" (*see id.* at 4); and Commerce relied upon that finding, in part, in reaching its remand determination. *See id.*; *see generally* section III.A, *supra* (discussing Commerce's file cabinet test).[26]

_____

[26]Bond Street's real quarrel is with Commerce's finding that the Stebco cart "slid[] under" the file cabinet. In essence, Bond Street contends that – if the load must be "tipped"/"tilted" – the cart should not be considered to have "slid[] under" the load. *See*, *e.g.*, Pl.'s Brief at 4, 7-9; Pl.'s Reply Brief at 3-4, 5 n.7. As the Remand Results explain, however, nothing in the Antidumping

Commerce likewise did not ignore or reject the test that Bond Street conducted using a 50-pound box of copy paper. *See* Remand Results at 7 (describing Bond Street's test).  As section III.D.3.a (above) explains, the Remand Results themselves discuss Bond Street's test, making it clear that Commerce was fully aware of all details of that test, including the test results. *See* Remand Results at 7; *see also* section III.D.3.a (discussing Bond Street's test).  Bond Street's implicit argument seems to break down into two parts – first, a claim that the Stebco cart "failed" Bond Street's test, and, second, a claim that such a "failed" test precludes the Stebco cart from falling within the scope of the Antidumping Order.  Both claims are fatally flawed.

First, although Bond Street apparently contends that the Stebco cart "failed" Bond Street's test (*i.e.*, the cart did not "slide[] under" the 50-pound box of copy paper), the record is clear that – in conducting its test – Bond Street did not "tip"/"tilt" the load. *See* Pl.'s Reply Brief at 5 & n.7. Moreover, there is nothing in the record to suggest that the Stebco cart would not have "slid[] under" that box if Bond Street had "tipped"/"tilted" the load.[27]  And, contrary to Bond Street's repeated assertions, the "tipping"/"tilting" of a load is not precluded by the Antidumping Order. *See*, *e.g.*, Remand Results at 11.  But, second, and even more importantly, there is no requirement that, to fall

_____

Order precludes "tipping"/"tilting" a load before slid[ing] a cart under it. *See* Remand Results at 11; *see generally* section III.A, *supra*.  Moreover, as discussed elsewhere herein, there is no requirement that, to fall within the scope of the Antidumping Order, a hand cart must "slide[] under" every load. *See* Remand Results at 9, 11; *see also* n.18, *supra*.  Thus, even if the Antidumping Order did not permit the "tipping"/"tilting" of a load (and, thus, the Stebco cart did not "slide[] under" the file cabinet in Commerce's test), Commerce's remand determination would not be undermined and still could be sustained based on the other two tests that Commerce conducted. *See* n.12, *supra*.

[27]Indeed, there is record evidence that affirmatively supports the notion that the Stebco cart would have "slid[] under" the 50-pound box of copy paper in Bond Street's test, if Bond Street had "tipped"/"tilted" the load.  Specifically, in Commerce's testing, the Stebco cart "slid[] under" a 50-pound file cabinet with that load "tipped"/"tilted." *See* Remand Results at 4.

within the scope of the Antidumping Order, a hand cart must be able to "slide[] under" *any and all*

loads (or even all loads for which the cart was designed).  *See* Remand Results at 9, 11.

In short, because there is no requirement that a hand cart covered by the Antidumping Order

be capable of "slid[ing] under" all loads, neither the results of Commerce's file cabinet test nor the

results of Bond Street's test "fairly detracts from [the] weight" of other record evidence, including

the results of Commerce's tests using 15-pound and 30-pound boxes.  *See* Suramerica, 44 F.3d at

985.  But even if Commerce's file cabinet test and/or Bond Street's test could be characterized as

detracting from other record evidence, the record as a whole demonstrates that both tests were

properly considered by Commerce in reaching its remand determination.

In sum, the administrative record reflects that Commerce carefully considered all tests before

it – including Bond Street's test, as well as the three tests that Commerce conducted – and

determined on remand, based on the entirety of the record, that, "notwithstanding the collapsible .

. . design of the toe plate, the location of the bungee cord hook, and the absence of a kick plate,"

Bond Street's Stebco cart "is adept at sliding under a load for the purposes of lifting/moving that

load"; that "once the projecting edge/toe plate is slid under a load, the projecting edge/toe plate

remained stable and there [is] no difficulty in lifting and moving the load"; and that the Stebco cart

thus "has the operational and functional ability to slide under a load for the purposes of lifting and/or

moving that load" and therefore falls "within the scope of the Order."  *See* Remand Results at 3-4,

12; *see also id.* at 1-2, 5, 6-7, 9-11.

As such, Commerce's remand determination is supported by substantial evidence in the

record.  Bond Street's assertions to the contrary must be rejected.

## IV.  <u>Conclusion</u>

For all the reasons set forth above, Commerce's Final Results of Redetermination Pursuant to Court Remand:  Hand Trucks and Certain Parts Thereof from the People's Republic of China must be sustained.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided:  April 12, 2011
              New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BOND STREET, LTD., | : |
| Plaintiff, | : |
| v. | : |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| GLEASON INDUSTRIAL PRODUCTS, INC., and PRECISION PRODUCTS, INC., | : |
| | : |
| Defendant-Intervenors. | |

Court No. 08-00049

## **JUDGMENT**

This action having been duly submitted for decision; and the Court, after due deliberation, having rendered decisions herein;

Now, therefore, in conformity with said decisions, it is hereby

ORDERED, ADJUDGED, and DECREED that the U.S. Department of Commerce's Final Results of Redetermination Pursuant to Court Remand: Hand Trucks and Certain Parts Thereof from the People's Republic of China be, and hereby are, sustained.

/s/ Delissa A. Ridgway
Delissa A. Ridgway, Judge

Dated:  April 12, 2011
        New York, New York